**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| Michael Tennenbaum,<br>*as trustee of the Estancias Twelve Trust*,<br>Plaintiff,<br><br>v.<br><br>Fahad Ghaffar, et al.,<br>Defendants. | Civil No. 25-1579 (ADC) |

**REPORT AND RECOMMENDATION**

Pending before the Court are: (1) Defendant Fahad Ghaffar's motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) at Docket No. 16; and (2) Defendant Amir Ghaffar's motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), for lack of indispensable party under Rule 12(b)(7), and for lack of Article III standing under Rule 12(b)(1) of the Federal Rules of Civil Procedure at Docket No. 46. Plaintiff filed responses to both motions at Docket Nos. 27 and 61. Defendants replied at Docket Nos. 30 and 66. Plaintiff sur-replied at Docket Nos. 42 and 73. For the reasons set forth below, I recommend that Fahad Ghaffar's motion to dismiss be **GRANTED in part and DENIED in part** and that Amir Ghaffar's motion to dismiss be **GRANTED**.

## I. Background

The complaint in this case concerns two related entities: Innoveo AG, a Swiss company founded in 2007 that allegedly developed a no-code software platform to build enterprise grade software for entities such as insurance companies, and Innoveo, Inc. ("Innoveo"), a Delaware corporation formed on August 6, 2021. Docket No. 1 at ¶¶ 14-15, 19. According to the complaint and in summary, on April 7, 2021, Innoveo AG's shareholders executed an investment agreement which provided for "the conversion of Innoveo AG into a United States entity by means of a contribution of the outstanding shares of Innoveo AG in exchange for shares of the new United

States entity." Id. at ¶ 18. The United States entity referenced therein was Innoveo, established under Delaware law. Id. at ¶ 19. Plaintiff ultimately became a shareholder of Innoveo. Id. at ¶ 45.

According to the complaint, Fahad Ghaffar worked for Paulson & Co., Inc., an investment firm owned by John Paulson ("Paulson"), and eventually became the senior manager overseeing the firm's Puerto Rico investments. Id. at ¶¶ 8-9. Around 2015, Paulson introduced Plaintiff to Fahad Ghaffar. Id. at ¶ 11. Plaintiff alleges that, as their relationship evolved, Fahad Ghaffar and his brother Amir Ghaffar induced Plaintiff to invest in Innoveo AG through a series of materially false and misleading statements. Id. at ¶¶ 21-22. Plaintiff further alleges that, during a telephone call on or about January 31, 2021, Fahad Ghaffar represented that: (1) "Innoveo AG's market valuation of approximately $60,000,000 was significantly below its true value; (2) that Innoveo AG owned and was enhancing cutting-edge technology for insurance software; (3) that Innoveo AG was experiencing rapid growth; and (4) that Fahad [Ghaffar], as Chairman of the Board, possessed the requisite expertise and experience to successfully lead and scale the company." Id. at ¶ 27. Plaintiff also claims that Fahad Ghaffar falsely claimed that Paulson had committed to investing in Innoveo. Id. at ¶ 26. The complaint further alleges that, during a lunch meeting in early February 2021, Amir Ghaffar represented that Innoveo AG owned advanced software suitable for use by major financial institutions, including MassMutual and UBS, and requested introductions to contacts at those companies. Id. at ¶¶ 31-32. Plaintiff alleges that these representations were materially false because the software lacked the capabilities described. Id. at ¶ 33. Relying on those alleged representations, Plaintiff, through the Estancias Twelve Trust, invested $4,000,000 during the Innoveo AG's first financing round in April 2021. Id. at ¶ 39. Plaintiff later exchanged that interest for shares of Innoveo. Id. at ¶ 45. On May 16, 2022, Plaintiff invested an additional $435,307 in Innoveo. Id. at ¶ 47.

According to the complaint, Innoveo's financial condition subsequently deteriorated. Id. at ¶ 51. Plaintiff alleges that, during the summer of 2023 and again on November 6, 2023, Fahad Ghaffar represented that the company remained a going concern, had experienced significant revenue growth, and personally guaranteed Plaintiff against losses that could result from his investment. Id. at ¶¶ 51-52. Plaintiff further alleges that, in an email dated November 13, 2023, Amir Ghaffar represented that Innoveo was "financially stable, nearing breakeven, and growing through existing and new customers", and that "he and his partners continued investing at a $60

million valuation." Id. at ¶ 53. Plaintiff sustains that these oral and written statements were materially false and concealed the company's true financial condition. Id. at ¶ 55. Plaintiff further sustains that it did not discover the alleged falsity of Defendants' representations until late 2023, when Innoveo's CEO disclosed its financial distress and informed shareholders that without additional funding it would cease operations and file for bankruptcy. Id. at ¶¶ 54-55.

Plaintiff filed suit against Defendants for securities fraud in violation of Section 10 of the Securities Exchange Act, 15 U.S.C. § 78(j)(b) and Rule 10b-5, 17 C.F.R. § 240.10b-5. Docket No. 1. Plaintiff also asserted claims for unjust enrichment, fraud/*dolus*, bad faith, and estoppel pursuant to the Puerto Rico Civil Code of 2020, as well as a claim for violation of the Uniform Securities Act of Puerto Rico ("PRUSA"). Id. Plaintiff seeks compensation because Fahad Ghaffar and Amir Ghaffar allegedly orchestrated a "calculated and deeply deceptive scheme" "to induce a multimillion-dollar investment from Estancias Twelve Trust, managed by Michael Tennenbaum [...], into a company that was neither viable nor truthful in its representations." Id. at p. 1. Plaintiff claims that Amir Ghaffar and Fahad Ghaffar "presented Innoveo, Inc. [...] as a high-growth, cutting edge technology firm poised for market disruption" when, "[i]n reality, Innoveo was insolvent, lacked the proprietary software it claimed to own, and was artificially propped up by internal dealings designed to mislead investors about its growth and value." Id. Plaintiff seeks compensatory damages, appropriate equitable and injunctive relief, and costs and attorney's fees. Id. at p. 20.

Fahad Ghaffar moves to dismiss the complaint arguing that Plaintiff failed to state a claim for securities fraud because the alleged misrepresentations and omissions were either disclosed in contemporaneous written materials or constituted non-actionable forward-looking statements. Docket No. 16. Fahad Ghaffar further contends that Plaintiff cannot establish justifiable reliance given the written disclosures, having had access to professional advice and opportunity to evaluate the investment, and that Plaintiff failed to adequately plead scienter and loss causation under the Private Securities Litigation Reform Act of 1995 ("PSLRA"). Id. Fahad Ghaffar also argues that Plaintiff's allegations regarding the involvement of his attorneys undermine the plausibility of his claims. Id. Finally, Fahad Ghaffar seeks dismissal of Plaintiff's Puerto Rico law claims arguing that PRUSA does not apply to the alleged transaction, that the unjust enrichment claim is unavailable where other legal remedies are available for Plaintiff, that the *dolus* claim fails absent

allegations of intentional deception at the time of contracting, and that the estoppel claim is inconsistent with Plaintiff's subsequent conduct. Id.

Amir Ghaffar also moves to dismiss the complaint arguing that Plaintiff failed to plead fraud with the particularity as required under Federal Rule of Civil Procedure 9(b) and the PSLRA. Docket No. 46. Amir Ghaffar further contends that Plaintiff failed to allege any actionable misrepresentation or omission because the alleged statements were consistent with contemporaneous written investment materials. Id. Amir Ghaffar also argues that Plaintiff failed to adequately plead scienter and loss causation because the complaint does not allege facts showing that Amir Ghaffar acted with intent to deceive or that his alleged statements caused Plaintiff's losses. Id. Amir Ghaffar additionally seeks dismissal of Plaintiff's Puerto Rico law claims, arguing that PRUSA does not extend to private investment transactions, that unjust enrichment is unavailable where Plaintiff has other legal remedies, and that the *dolus* claim fails absent allegations of intentional deception. Id. Finally, Amir Ghaffar moves for dismissal under Rule 12(b)(7), asserting that Q Advisors is a required party given its role in preparing the investment materials and that Paulson is an indispensable party because Plaintiff's alleged damages stem from Paulson's representations regarding Innoveo and his subsequent actions, including an action under the Racketeer Influenced and Corrupt Organizations ("RICO") Act against Innoveo that allegedly discredited the company. Id. Amir Ghaffar also moves for dismissal under Rule 12(b)(1), arguing that Plaintiff lacks Article III standing because he failed to allege an injury in fact or alternatively because any alleged injury was caused by other parties. Id.

## II. Legal Standard

### 1. Rule 12(b)(6) of the Federal Rules of Civil Procedure and the Higher Pleading Standard for Securities Fraud

A defendant may move to dismiss an action for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss, a complaint must establish "a plausible entitlement to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007); Rodríguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007); FED. R. CIV. P. 12 (b)(6). A claim is plausible when the facts alleged allow for "a reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 663-64 (2009). Pursuant to Rule 12(b)(6) of the Federal Rules of

Civil Procedure, in considering a motion to dismiss, the Court must accept the well-pleaded factual allegations in the complaint as true and resolve all inferences in favor of the plaintiffs. Mississippi Pub. Employees' Ret. Sys. v. Bos. Sci. Corp., 523 F.3d 75, 85 (1st Cir. 2008); ACA Fin. Guar. Corp. v. Advest, Inc., 512 F.3d 46, 58 (1st Cir. 2008).

Rule 9(b) of the Federal Rules of Civil Procedure provides that "a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). Rule 9(b) governed securities fraud claims until 1995, when the Private Securities Litigation Reform Act of 1995 ("PSLRA"), codified at 15 U.S.C. § 78u-4, amended the Securities Exchange Act of 1934 to codify a heightened pleading standard for private securities fraud actions. Greebel v. FTP Software, Inc., 194 F.3d 185, 193 (1st Cir. 1999) (citing Simcox v. San Juan Shipyard, Inc., 754 F.2d 430, 439 (1st Cir. 1985)). The PSLRA requires that plaintiffs specify "each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1); Mississippi Pub. Employees' Ret. Sys., 523 F.3d at 85. The First Circuit has recognized that this heightened pleading requirement is "congruent and consistent with the pre-existing standards of this circuit" under Rule 9(b), which required plaintiffs to specify "the time, place, and content of an alleged false representation." Rodríguez-Ortiz, 490 F.3d at 96 (quotations omitted).

In evaluating the pleadings under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court may consider documentary evidence that has been fairly incorporated into the pleadings. Curran v. Cousins, 509 F.3d 36, 44 (1st Cir. 2007) (citations omitted); Watterson v. Page, 987 F.2d 1, 3-4 (1st Cir. 1993) (citations omitted). This includes documents as to which authenticity is not disputed, documents central to plaintiffs' claims, and documents sufficiently referred to in the complaint. Id. (citations omitted).

**2. Rule 12(b)(1) of the Federal Rules of Civil Procedure**

A complaint must be dismissed under Rule 12(b)(1) of the Federal Rules of Civil Procedure if, after considering the facts alleged by plaintiff in the most favorable light, the Court lacks subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). There is no subject matter jurisdiction when the action does not arise under the Constitution, does not fall under one of the established categories of Article III, Section 2, does not present a case or controversy under the U.S. Constitution, or does

not fall under any jurisdictional statute. Baker v. Carr, 369 U.S. 186, 199 (1962). Rule 12(b)(1) is a proper vehicle to move for the dismissal of an action for lack of standing. Dantzler, Inc. v. Empresas Berríos Inventory & Operations, Inc., 958 F.3d 38, 46 (1st Cir. 2020) ("standing is a prerequisite to a federal court's subject matter jurisdiction") (quoting Hochendoner v. Genzyme Corp., 823 F.3d 724, 730 (1st Cir. 2016)).

**3. Rule 12(b)(7) of the Federal Rules of Civil Procedure**

Pursuant to Rules 12(b)(7) and 19 of the Federal Rules of Civil Procedure, a party may move to dismiss a claim for failure to join an indispensable party. FED. R. CIV. P. 12(b)(7), 19. Rule 19(a)(1) of the Federal Rules of Civil Procedure provides: "A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." FED. R. CIV. P. 19(a)(1). This first part of Rule 19(a) is intended to ascertain whether a party is required in an action but not whether its joinder is indispensable. Once the Court has decided that a party is required under Rule 19(a)(1), Rule 19(a)(2) provides: "If a person has not been joined as required, the court must order that the person be made a party." FED. R. CIV. P. 19(a)(2).

The language in Rule 19(a)(2) does not allow for the exercise of discretion to dismiss due to the nonjoinder of a party found to be required under Rule 19(a)(1) but who is not yet regarded as indispensable under Rule 19(b). Id. at § 1611 ("the court has no discretion at this point because of the mandatory language of the rule."); Askew v. Sheriff of Cook Cnty., Ill., 568 F.3d 632, 635-36 (7th Cir. 2009) (the court may not skip 19(a)(2)). It is only when joinder is not feasible (e.g., when joinder would divest the Court of jurisdiction or the absent party objects to the venue), that the Court must then consider the four factors in Rule 19(b) to see if the action can proceed without the absent party or should be dismissed. Id. The trial court has discretion to apply the Rule 19(b) factors and proceed to dismissal, but an analysis of the factors and an explanation should be afforded. Bakia v. Los Angeles Cnty. of State of Cal., 687 F.2d 299, 301-02 (9th Cir. 1982);

Maldonado-Viñas v. Nat'l W. Life Ins. Co., 862 F.3d 118, 122-23 (1st Cir. 2017) (order vacated and case remanded with instructions for lower court to determine whether it is nevertheless equitable for the case to proceed without an absent party whose joinder was not feasible).

## III. Discussion

### A. Plaintiff has standing.

Article III of the U.S. Constitution limits federal jurisdiction to actual cases and controversies. U.S. CONST. art. III, § 2. Standing is the doctrine through which courts enforce that constitutional limitation. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). To establish constitutional standing, a plaintiff must plausibly allege "(1) an injury in fact, (2) fairly traceable to the defendant's challenged conduct, and (3) likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016). These elements are not mere pleading requirements but are an indispensable part of the plaintiff's case. Lujan, 504 U.S. at 561. At the pleading stage, however, general factual allegations of injury are sufficient, as the Court presumes that those allegations encompass the specific facts necessary to state a claim. Id.

Amir Ghaffar argues that Plaintiff lacks Article III standing because he has not suffered a concrete economic injury. Specifically, Amir Ghaffar contends that Plaintiff has recovered, or will ultimately recover, the value of the investment through its continued ownership interest in Tinubu Innoveo LLC, the entity that acquired Innoveo's assets. According to Amir Ghaffar, because Plaintiff's retained equity may eventually increase in value to equate or exceed the original investment, Plaintiff cannot demonstrate an injury in fact. I disagree. The complaint alleges that Plaintiff, acting through the Estancias Twelve Trust, invested approximately $4.4 million in Innoveo relying on Defendants' alleged misrepresentations and that, although Plaintiff subsequently recovered a portion of that investment, he has not been made whole. See Docket No. 1 at ¶¶ 60-61. Plaintiff does not seek to recover the entire investment. Rather, the complaint expressly acknowledges "narrow" recovery and seeks the amount Plaintiff alleges remains outstanding, approximately $1.5 million. Id. at ¶ 61 and p. 20. Accepting those allegations as true and drawing all reasonable inferences in Plaintiff's favor, Plaintiff has adequately alleged a concrete economic injury for purposes of Article III.

Amir Ghaffar's argument conflates the standing inquiry with the ultimate determination of damages. Whether Plaintiff's retained equity in Tinubu Innoveo LLC ultimately appreciates in

value sufficient to offset some or all of the alleged losses presents factual questions concerning valuation, offsets, and the proper measure of damages. At this stage, the Court's inquiry is limited to whether Plaintiff has plausibly alleged a present injury, not whether Defendants may later establish that Plaintiff has been made whole. Factual disputes regarding the current or future value of Plaintiff's interest in Tinubu Innoveo LLC are not a proper subject for resolution at the pleadings stage.

Amir Ghaffar also argues that Plaintiff's alleged losses are attributable to Paulson's RICO suit rather than Defendants' alleged misconduct. This argument does nothing to defeat Plaintiff's standing. Article III requires only that Plaintiff allege that the injury be traceable to Defendants' conduct. It does not require Plaintiff to establish proximate causation or negate every alternative cause at the pleading stage. Whether other litigation affected the value of Plaintiff's investment or otherwise reduced the recoverable damages presents questions of causation more appropriately resolved on a developed factual record. In sum, accepting the complaint's factual allegations as true, Plaintiff has plausibly alleged a concrete economic injury traceable to Defendants' conduct and redressable through a favorable judicial decision. Plaintiff has adequately established Article III standing.

**B. Q Advisors and Paulson are not indispensable parties.**

Amir Ghaffar argues that dismissal is warranted because Plaintiff failed to join Q Advisors and Paulson as indispensable parties. Dismissal under Rule 12(b)(7) is appropriate only where the absent party is required, joinder is not feasible, and the Rule 19(b) factors demonstrate that the action cannot proceed in the party's absence. Amir Ghaffar has not made that showing. As an initial matter, Amir Ghaffar has not established that either nonparty is required under Rule 19(a). The motion does not explain why complete relief cannot be rendered among the existing parties in their absence, identify any legally protected interest of Q Advisors or Paulson that would be impaired by this litigation, or demonstrate that their absence exposes any existing party to a substantial risk of multiple or inconsistent obligations. See FED. R. CIV. P. 19(a)(1). Amir Ghaffar merely argues that Q Advisors prepared the investment materials and participated in Innoveo's efforts to raise capital, and that Paulson' subsequent RICO litigation contributed to Innoveo's decline. Those allegations bear on Amir Ghaffar's defenses regarding causation and comparative

fault or indicate that Q Advisors could be a witness in the case. However, they do not establish that either Q Advisors or Paulson is a required party under Rule 19(a)(1).

Even if Amir Ghaffar had established that Q Advisors or Paulson are required parties, he still failed to establish that dismissal is warranted under Rule 19(b). Under Rule 19(a)(2), once the Court determines that an absent party's interest in the litigation is sufficient to satisfy the test in Rule 19(a), the Court is required to order joinder. 7 Wright, Miller Kane, Federal Practice and Procedure § 1604 (2019) ("Once it has been decided that a person whose joinder is feasible should be brought into the action, the claimant should be given reasonable opportunity to add that person."). Amir Ghaffar does not contend that joining either Q Advisors or Paulson is not feasible, a necessary predicate to dismissal under Rule 19(b).

Moreover, Plaintiff does not allege that it has a contractual relationship with any of the Defendants and Amir Ghaffar's arguments tend to implicate Q Advisors and Paulson as potential joint tortfeasors. It is well established that alleged joint tortfeasors are not required parties under Rule 19. Temple v. Synthes Corp., 498 U.S. 5, 7 (1990); Pujol v. Shearson/American Express, Inc., 877 F.2d 132, 137 (1st Cir. 1989) ("a person potentially liable as a joint tortfeasor is *not* a necessary or indispensable party, but merely a permissive party subject to joinder under Rule 20"); Corbel Distressed & Special Opportunities Fund, L.P. v. Londono, 2023 WL 7390054, at *5 (D.P.R. Nov. 8, 2023) (distinguishing tort actions from contract actions and holding that alleged joint tortfeasors in a securities fraud and Puerto Rico tort case are not indispensable parties under Rule 19, but permissive parties subject to joinder under Rule 20). Accordingly, Amir Ghaffar has failed to demonstrate that Q Advisors or Paulson are required parties under Rule 19, much less indispensable parties.

**C. Federal Securities Fraud Claims**

Section 10(b) of the Securities Exchange Act of 1934 prohibits the use or employment, "in connection with the purchase or sale of any security," of "any manipulative or deceptive device or contrivance" in contravention of Securities and Exchange Commission rules and regulations. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 318 (2007) (quoting 15 U.S.C. § 78j(b)). Commission Rule 10b-5 prohibits making "any untrue statement of a material fact" or omitting "a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b-5. "The courts

have implied from these statutes and Rule a private damages action, which resembles, but is not identical to, common-law tort actions for deceit and misrepresentation." Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 341 (2005) (citations omitted). A securities fraud claim must include the following six elements: (1) a material misrepresentation or omission; (2) scienter; (3) connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation. Id. at 341-42.

**1. Actionable Misrepresentations**

"To survive a motion to dismiss under the securities law, a complaint must adequately plead statements [or omissions] that were 'misleading as to a material fact.'" Thant v. Karyopharm Therapeutics Inc., 43 F.4th 214, 222 (1st Cir. 2022) (quoting Matrixx Initiatives, Inc. v. Siracusano, 563 U.S. 27, 38 (2011)). A plaintiff must also provide "factual allegations that would support a reasonable inference that adverse circumstances existed at the time of the offering, and were known and deliberately or recklessly disregarded by defendants." Greebel, 194 F.3d at 193-94. "A fact is material if it is substantially likely that the disclosure of the omitted [or misrepresented] fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." Construction Industry & Laborers Joint Pension Trust v. Carbonite, Inc., 22 F.4th 1, 8 (1st Cir. 2021) (internal quotations and citations omitted). In contrast, "upbeat statements of optimism and puffing about [a] company's prospects are not actionable." Yan v. ReWalk Robotics Ltd., 973 F.3d 22, 32-33 (1st Cir. 2020) (internal quotations and citations omitted). And as explained above, each statement must independently satisfy the PSLRA's requirement that the complaint specify why it was misleading, not merely assert that it was. 15 U.S.C. § 78u–4(b)(1)(B). While the PSLRA does not require plaintiffs to plead their evidence, it requires allegations with enough substance to place "a significant amount of meat […] on the bones of the complaint." Ponsa-Rabell v. Santander Securities, LLC, 2020 WL 5413620, at *6 (D.P.R. June 5, 2020) (internal quotations and citations omitted).

**a. Fahad Ghaffar**

The complaint attributes four misrepresentations to Fahad Ghaffar: (1) that Innoveo's market valuation of approximately $60 million was significantly below its true value; (2) that Innoveo owned and was enhancing cutting-edge insurance software technology; (3) that Innoveo

was experiencing rapid growth; and (4) that Fahad Ghaffar possessed the expertise and experience necessary to successfully lead and scale the company. Docket No. 1 ¶ 27.

Plaintiff has adequately pled the alleged valuation and growth misrepresentations. Both statements are attributed to Fahad Ghaffar, are alleged to have been made during the offering period and are supported by particularized factual allegations. Plaintiff alleges that Innoveo's EBITDA declined 130.05% between 2020 and 2022, and, together with the alleged manipulation of customer traction, pleads facts supporting a reasonable inference that Fahad Ghaffar's valuation and growth statements were misleading when made. See Docket No. 1 ¶¶ 50, 57. Specifically, Plaintiff alleges that Fahad Ghaffar used his position within the Paulson business network to direct contracts to Innoveo through entities owned by Paulson but administered by Fahad Ghaffar, thereby artificially inflating Innoveo's apparent customer traction and resulting valuation. Id. at ¶ 57. Plaintiff further alleges materiality by asserting that, had Innoveo's true financial condition and growth prospects been disclosed, he would not have invested, supporting the inference that the omitted information would have altered the total mix of information available to a reasonable investor. Id. at ¶¶ 74, 76. Taken together, these allegations provide a sufficiently detailed factual basis from which the Court may infer that Fahad Ghaffar's valuation and growth statements were materially misleading, which satisfies the heightened pleading requirements of Rule 9(b) and the PSLRA.

Fahad Ghaffar relies on the Investment Memorandum, Due Diligence Book, and Investment Agreement to negate any inference that his alleged statements as to valuation and growth were false or misleading. Because the Investment Memorandum, Due Diligence Book, and Investment Agreement are central to the transaction giving rise to Plaintiff's securities fraud claims, I consider these documents without converting the motion into one for summary judgment. See Watterson, 987 F.2d at 3; 5B Wright, Miller and Spencer, Federal Practice and Procedure, § 1357 (2024) (courts may consider matters incorporated by reference or integral part of the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned).[1] Even so,

[1] Plaintiff objected to the consideration of these documents, but the objections provide no basis to question the authenticity of the documents or that these are not what Fahad Ghaffar represents them to be. Plaintiff's objections focus on the accuracy, completeness, context, and interpretation of the content

none of these documents foreclose Plaintiff's allegations that Fahad Ghaffar made materially false statements concerning Innoveo's valuation and growth.

Fahad Ghaffar argues that his alleged oral representations were not misleading because the same characterizations appear in a written offering document, herein referred to as the Investment Memorandum, prepared with the assistance of Q Advisors. However, Fahad Ghaffar's reliance on the Investment Memorandum is unpersuasive. Although accurate factual disclosures may render an allegedly misleading statement immaterial when the inconsistency between the disclosure and the challenged statement is so glaring that it exhausts the statement's capacity to influence a reasonable investor, Virginia Bankshares, Inc. v. Sandberg, 501 U.S. 1083, 1097 (1991), that is not the case here. The Investment Memorandum does not disclose the facts Plaintiff alleges rendered Fahad Ghaffar's valuation and growth statements misleading, namely, that Innoveo's performance was deteriorating and that its market traction was artificially inflated through undisclosed related-party business. Nor does the Investment Memorandum otherwise contain facts that would so plainly undermine those statements that a reasonable investor could not have been influenced by them. To the contrary, the Investment Memorandum states that it is based on information provided by Innoveo, disclaims any representation regarding the accuracy or completeness of that information, and advises investors to rely on the representations contained in the final transaction documents. Docket No. 16-2 at 2. These disclosures do not contradict or obviously discredit the challenged statements and therefore do not eliminate their alleged capacity to influence a reasonable investor. Accordingly, the Investment Memorandum does not contain the type of accurate, contradictory disclosure contemplated by Virginia Bankshares that would negate the materiality of the alleged misrepresentations at the pleading stage. Accepting the

---

of the documents. See Docket No. 27 at p. 10. But that goes to the weight or significance of the documents, not their authenticity. The Court may therefore consider the documents, which are central to the investment transaction underlying Plaintiff's claims, for the limited purpose of determining what information Fahad Ghaffar purports to have disclosed to Plaintiff and when that information was disclosed, without accepting the truth of those disclosures or resolving factual disputes concerning Innoveo's actual financial condition. Furthermore, there seems to be no dispute that Plaintiff has had access to these documents since the initial investment. "[T]he problem that arises when a court reviews statements extraneous to a complaint generally is the lack of notice to the plaintiff.... Where plaintiff has actual notice ... and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated." Watterson, 987 F.2d at 3-4 (quoting Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir.1991)).

complaint's allegations as true, as the Court must at this stage, the Investment Memorandum does not defeat Plaintiff's Rule 10b-5 claims on account of misrepresentations pertaining to the valuation and growth of Innoveo.

The same is true of the Due Diligence Book. Fahad Ghaffar argues that it disclosed detailed information regarding Innoveo's revenues, customer relationships, valuation assumptions, and execution risks. Although the Due Diligence Book discusses Innoveo's relationships with two major insurance-company customers and includes projected valuation analyses, it does not disclose the facts Plaintiff alleges rendered Fahad Ghaffar's statements misleading, namely, that Innoveo's performance was deteriorating and that its apparent market traction was artificially enhanced through contracts Fahad Ghaffar allegedly directed to the company through entities within the Paulson network. Docket No. 16-3. Accordingly, it does not provide the type of accurate disclosure that would render Fahad Ghaffar's alleged oral statements immaterial under Virginia Bankshares.

The Investment Agreement fares no better. Fahad Ghaffar argues that the investment agreement allocated risk through comprehensive representations and warranties and limited the parties' reasonable reliance to those contractual representations. However, Plaintiff does not premise his claims with respect to valuation and growth on the investment agreement nor does Plaintiff contend that the representations in the investment agreement were false. Rather, the complaint alleges that Fahad Ghaffar fraudulently induced Plaintiff to invest in Innoveo through materially false oral statements concerning Innoveo's valuation and growth made during the solicitation of the investment. Docket No. 1 at ¶¶ 27-29. Nothing in the investment agreement forecloses that theory. Although Annex 4 contains representations concerning Innoveo's financial statements, Plaintiff does not allege that those representations were false. Nor does the agreement disclose the facts Plaintiff contends rendered Fahad Ghaffar's alleged oral statements misleading. Accordingly, the representations and warranties in the investment agreement do not defeat the plausibility of Plaintiff's securities fraud claims with respect to the valuation and growth of Innoveo.

Notwithstanding the foregoing, the technology and chairman's-expertise statements imputed on Fahad Ghaffar are not adequately pled. Plaintiff's asserted basis for falsity in connection with the representations made pertaining to the technology is that Innoveo's proprietary

software was ultimately deficient. But the complaint does not identify any specific defect existing at the time Fahad Ghaffar allegedly described the software as "cutting-edge," nor does it explain how the software failed to perform in a manner inconsistent with that characterization. Plaintiff alleges no facts regarding specific features, functionality, customer complaints, failed implementations, internal testing, or other contemporaneous information indicating that the statement was false when made. Plaintiff merely relies on Innoveo's subsequent financial decline to infer that its technology must have been deficient all along. Id. at ¶ 62. But that is precisely the type of hindsight pleading the PSLRA and First Circuit precedent have rejected. See Greebel, 194 F.3d at 193-94 (requiring "factual allegations that would support a reasonable inference that adverse circumstances existed at the time of the offering, and were known and deliberately or recklessly disregarded by defendants") (citations omitted). A bare allegation that the software proved unsuccessful, without particularized facts connecting that outcome to the falsity of Fahad Ghaffar's contemporaneous statements, is insufficient under 15 U.S.C. § 78u-4(b)(1). The representations pertaining to Fahad Ghaffar's expertise are also insufficiently pled. These representations are ultimately statements of opinion or self-assessment and may be actionable when the speaker did not hold the belief expressed or when the facts underlying the opinion do not support it. Virginia Bankshares, 501 U.S. at 1092-93. However, the complaint is devoid of any allegations concerning Fahad Ghaffar's expertise or qualifications to plausibly allege why any of his statements pertaining to his expertise were false or misleading at the time when these were made. Moreover, generalized expressions of confidence in management's ability are the type of corporate optimism that ordinarily constitutes non-actionable "puffery". Yan, 973 F.3d at 32.

**b. Amir Ghaffar**

The complaint attributes two misrepresentations to Amir Ghaffar: (1) that Innoveo owned and was developing cutting-edge technology for insurance software; and (2) that Innoveo was stable, nearing break-even, and growing through existing and new customers, as stated in an email sent in November 2023.

The complaint fails to adequately plead Amir Ghaffar's alleged technology misrepresentation. Plaintiff alleges that Amir Ghaffar represented that Innoveo possessed and was developing cutting-edge technology but provides no facts to explain why the statement was false or misleading when made. Docket No. 1 at ¶¶ 31-33. As discussed above, Plaintiff's assertion that

Innoveo's software was deficient does not identify the alleged deficiency, explain how the technology failed to perform as represented, or establish that Amir Ghaffar knew of any deficiency at the time of the statement. Accordingly, for the same reasons explained with respect to Fahad Ghaffar's alleged technology representation, Plaintiff fails to satisfy the PSLRA's pleading requirements as to Amir Ghaffar.

Plaintiff separately alleges that Amir Ghaffar represented in a November 2023 email that Innoveo was stable, nearing break-even, and continuing to grow through existing and new customers, while emphasizing that Amir Ghaffar and his partners continued investing in the company at a $60 million valuation. Id. at ¶ 53. Amir Ghaffar argues that this statement cannot be the basis for Plaintiff's securities fraud claim against him because it was made after Plaintiff's final purchase of Innoveo securities. I agree. A private Rule 10b-5 claim requires that the alleged misrepresentation or omission be made "in connection with" the plaintiff's purchase or sale of securities. Thus, a plaintiff generally may not establish liability based solely on allegations that a defendant's misleading statements caused the plaintiff to retain securities already owned rather than sell them. Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 737-38 (1975). Moreover, a plaintiff cannot avoid this limitation by alleging that later statements were part of a continuing fraudulent scheme where there is no actionable pre-purchase misrepresentation or omission that connects the later conduct to the securities transaction. Yan, 973 F.3d at 35. Plaintiff contends that Amir Ghaffar's November 2023 email was "designed to reinforce the illusion of viability and conceal the truth." Docket No. 1 at ¶ 53. But that theory depends on the existence of an actionable pre-purchase misrepresentation by Amir Ghaffar. As explained above, Plaintiff has not pled that Amir Ghaffar's prior statement regarding Innoveo's technology was false or misleading under the PSLRA. Accordingly, the November 2023 email alone cannot serve as the basis for Plaintiff's Rule 10b-5 claim against Amir Ghaffar.

**2. Forward-Looking Statements and the Safe Harbor Clause**

Fahad Ghaffar argues that the statements concerning Innoveo's valuation and growth prospects are protected by the PSLRA's safe harbor for forward-looking statements because these involved projections regarding Innoveo's future performance and were accompanied by cautionary language in the Investment Memorandum. The safe harbor protects forward-looking statements "accompanied by meaningful cautionary statements identifying important factors that could cause

actual results to differ materially from those in the forward looking-statement," where the verb tense and accompanying risk disclosures make the statement's forward-looking character clear. 15 U.S. Code § 78u-5(c); Yan, 973 F.3d at 34-35. Consequently, it does not extend to statements about a company's present technology, present customer relationships, or present financial condition, because those are not projections at all. The surviving statements here, that Innoveo's approximately $60,000,000 valuation was significantly below its true value and that Innoveo was experiencing rapid growth, describe Innoveo's condition at the time each statement was made, not a projection of its future condition. These are present-tense factual claims, not forward-looking statements, and are thus not covered under the safe harbor provision regardless of any contemporaneous cautionary language. Yan, 973 F.3d at 34-35 (safe harbor protected the defendant's statements about future clinical studies but did not extend to its present-tense description of existing regulatory correspondence, which was analyzed under the ordinary misrepresentation framework instead). Fahad Ghaffar's argument that the Investment Memorandum otherwise corroborates the valuation and growth statements enough to defeat any claim that they were misleading does not rely on the safe harbor at all, and it fails. And Virginia Bankshares recognizes that accurate disclosures can neutralize an otherwise misleading statement only when they so plainly undermine the challenged statement that it loses its capacity to influence a reasonable investor. 501 U.S. at 1097. Because the text of the Investment Memorandum discloses that its content came from Innoveo, which Plaintiff alleges was controlled by Fahad Ghaffar, it cannot be deemed independent of the valuation and growth statements imputed on Fahad Gaffar. That is, the Investment Memorandum restates the statements rather than test them. The Investment Memorandum therefore cannot cure the challenged present-tense valuation and growth statements and Plaintiff's misrepresentation claims survive as to these two alleged misrepresentations by Fahad Ghaffar.

**3. Scienter**

The PSLRA's scienter requirement goes further than Rule 9(b). While Rule 9(b) allows intent and other conditions of mind to be alleged generally, the PSRLA displaces that leniency for claims under Section 10(b). Quiñones v. Frequency Therapeutics, Inc., 665 F.Supp.3d 156, 173 (D. Mass. 2023) (citation omitted) ("Congress has heightened the pleading standard for scienter allegations in private enforcement actions."). Scienter is "a mental state embracing intent to

deceive, manipulate, or defraud." Tellabs, 551 U.S. at 319 (quotation omitted). Accordingly, a complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the requisite state of mind." Kader v. Sarepta Therapeutics, Inc., 887 F.3d 48, 57 (1st Cir. 2018) (quoting 15 U.S.C. § 78u-4(b)(2)). A plaintiff may satisfy this standard by pleading facts tending to show either conscious intent to defraud or a high degree of recklessness. Greebel, 194 F.3d at 193-94. However, the inquiry is not whether any single allegation independently establishes scienter. Rather, the Court must evaluate the complaint holistically. Tellabs, 551 U.S. at 326 ("the court's job is not to scrutinize each allegation in isolation but to assess all the allegations holistically"). The relevant question is whether accepting the allegations as true and considering them collectively, "a reasonable person would deem the inference of scienter at least as strong as any opposing inference." Id. Ultimately, an inference of fraudulent intent must be "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." Id. at 324.

**a. Fahad Ghaffar**

Fahad Ghaffar argues that the complaint fails to raise a strong inference of scienter because Plaintiff alleges nothing more than negligence or hindsight dissatisfaction with an unsuccessful investment. It is true that a private action under Section 10(b) and Rule 10b-5 cannot rest on negligence alone because scienter requires either an intent to deceive or reckless disregard for the truth. Aldridge v. A.T. Cross Corp., 284 F.3d 72, 82 (1st Cir. 2002). The First Circuit has cautioned that scienter cannot be inferred merely because a business venture later failed or a prediction ultimately proved incorrect. Rodríguez-Ortiz, 490 F.3d at 97. Likewise, allegations that corporate officers were aware of ordinary business or regulatory difficulties alone do not establish scienter absent contemporaneous facts demonstrating that the defendant knew a statement was false or consciously disregarded an obvious risk that it would mislead investors. Yan, 973 F.3d 22, 39-41.

Viewed as a whole, Plaintiff's allegations go considerably further than hindsight pleading. The complaint alleges that Fahad Ghaffar orchestrated a scheme in which contracts were funneled through entities owned by the Paulson business network but administered by Fahad Ghaffar, thereby creating the appearance of genuine market demand for Innoveo's products. Docket No. 1 at ¶ 57. According to the complaint, "[t]his deceptive maneuver inflated Innoveo's valuation and misled Tennenbaum into believing the company was thriving[,]" subsequently "induc[ing]

Tennenbaum into investing millions in a company that was never what they claimed it to be." Id. Unlike the allegations rejected in Rodríguez-Ortiz, which relied primarily on a contractual dispute to infer fraudulent intent retroactively, Plaintiff alleges a contemporaneous and affirmative mechanism through which Fahad Ghaffar allegedly generated misleading data before making the challenged representations. If true, these allegations describe deliberate conduct designed to create a false impression of market traction rather than mere optimism about future performance.

Those allegations are reinforced by Plaintiff's claim that Innoveo's EBITDA declined by approximately 130% during the same 2020-2022 period in which Fahad Ghaffar represented that the company was experiencing rapid growth. See Docket No. 1 at ¶ 50. Although declining financial performance alone would not establish scienter, it provides relevant context where, as alleged here, the reported indicators of growth were deliberately overstated to support the investment. See Crowell v. Ionics, Inc., 343 F. Supp. 2d 1, 19 (D. Mass. 2004) ("Deliberate overstatement of revenues to consummate a major sale or acquisition of stock or assets is sufficient to support a strong inference of scienter.").

The complaint further alleges that Fahad Ghaffar orchestrated a scheme in which a law firm represented that it was acting in Plaintiff's interests, while Fahad Ghaffar allegedly exercised influence over the firm and manipulated its involvement in the transaction to conceal material facts and reinforce the appearance of a legitimate and promising investment. Docket No. 1 at ¶¶ 37-38. The complaint specifically alleges that the law firm played a central role in drafting the investment documents and facilitating the transaction. Id. And, according to both parties, the Due Diligence Book was prepared by the law firm in connection with that process. If proven, these allegations support an inference that Fahad Ghaffar did more than repeat an honestly held but mistaken assessment of the company's prospects. Rather, he allegedly took affirmative steps to cloak false information with the credibility of independent advisors. Courts have recognized that allegations of deliberate efforts to conceal known company problems or fabricate favorable financial information may support a strong inference of scienter where the complaint alleges actual knowledge and intentional conduct. See Local 731 I.B. of T. Excavators & Pavers Pension Tr. Fund v. Diodes, Inc., 810 F.3d 951, 960 (5th Cir. 2016).

Considering these allegations collectively, I conclude that the complaint sufficiently pleads scienter under the PSLRA. The alleged contract-funneling scheme, the contemporaneous

deterioration of Innoveo's financial performance, the representations concerning rapid growth, and the alleged manipulation of the due diligence process reinforce one another to support a coherent inference that Fahad Ghaffar knowingly misrepresented Innoveo's financial condition and commercial success to encourage Plaintiff's investment in Innoveo. At this stage, that inference is cogent and at least as compelling as Fahad Ghaffar's competing inference that he merely expressed good-faith optimism about a struggling business. Whether Plaintiff can ultimately substantiate these allegations is a question for summary judgment or trial, not one to be resolved at the pleadings stage. Finally, although Greebel recognizes that insider trading may be probative of scienter in appropriate circumstances, it makes equally clear that such allegations are neither required nor necessarily sufficient to establish scienter. 194 F.3d at 197 ("the PSLRA neither prohibits nor endorses the pleading of insider trading as evidence of scienter, but requires that the evidence meet the 'strong inference' standard"). My conclusion here does not depend on allegations of insider trading. It rests on the specific allegations of deliberate conduct viewed in their totality.

**b. Amir Ghaffar**

Because I have concluded that Plaintiff has failed to adequately plead an actionable misrepresentation by Amir Ghaffar, the securities fraud claim against him necessarily fails. Nonetheless, out of an abundance of caution, I independently consider whether the complaint adequately pleads scienter as to Amir Ghaffar. The PSLRA requires scienter to be pleaded with particularity as to each defendant. Kader, 887 F.3d at 57. Thus, the Court must determine whether, viewing the complaint as a whole, the allegations give rise to a cogent and compelling inference that Amir Ghaffar acted with an intent to deceive or with a high degree of recklessness. Tellabs, 551 U.S. at 323-24. They do not. As discussed above, Plaintiff fails to adequately plead that Amir Ghaffar's alleged statements regarding Innoveo's technology were false or misleading when made. More importantly, the complaint identifies no specific facts that could show that Amir Ghaffar knew those statements were false or consciously disregarded an obvious risk that they would mislead investors. Plaintiff relies principally on Innoveo's later financial difficulties to infer fraudulent intent, which is insufficient under the PSLRA. See Rodríguez-Ortiz, 490 F.3d at 96-97; Yan, 973 F.3d at 39-41. Neither does Amir Ghaffar's November 2023 email support a strong inference of scienter. As explained above, because the email was sent after Plaintiff's final

purchase of Innoveo securities, it cannot independently support a Rule 10b-5 claim. Absent an actionable pre-purchase misrepresentation by Amir Ghaffar, the email cannot transform otherwise deficient allegations into a strong inference of fraudulent intent. Considering the allegations collectively, the more compelling inference is that Amir Ghaffar expressed his understanding of Innoveo's technology and financial condition, not that he knowingly or recklessly misled Plaintiff. Accordingly, even if Plaintiff had adequately pled an actionable misrepresentation, the complaint would still fail to satisfy the PSLRA's heightened scienter requirement as to Amir Ghaffar. Because scienter is essential to claim securities fraud, I need not discuss whether Plaintiff adequately pled reliance and loss causation as to Amir Ghaffar. Camilo v. Nieves, 2013 WL 6632801, at *5 (D.P.R. Dec. 16, 2013) ("A district court can dismiss a claim under Section 10(b) of the 1934 Act if it finds that plaintiff's claim failed to plead scienter with sufficient particularity.") (citation omitted).

**4. Reliance**

Reliance is an essential element under Section 10(b) because it "ensures that there is a proper connection between a defendant's misrepresentation and a plaintiff's injury." Amgen Inc. v. Conn. Ret. Plans & Trust Funds, 568 U.S. 455, 461 (2013) (quoting Erica P. John Fund, Inc. v. Halliburton Co., 563 U.S. 804, 810 (2011)). "The traditional (and most direct) way a plaintiff can demonstrate reliance is by showing that he was aware of a company's statement and engaged in a relevant transaction--*e.g.*, purchasing common stock--based on that specific misrepresentation." Corbel Distressed & Special Opportunities Fund, L.P. v. Londono, 2023 WL 7390054, at *11 (D.P.R. Nov. 8, 2023) (quoting Erica P. John Fund, Inc., 563 U.S. at 810).

Plaintiff adequately pled reliance. He alleged that Fahad Ghaffar made specific representations concerning Innoveo's financial condition, customer growth, and business prospects, that Fahad Ghaffar manipulated the law firm's involvement in drafting the investment documents, and that Plaintiff relied on those representations in deciding to invest. Docket No. 1 at ¶¶ 27-29, 37-38. Accepting those allegations as true, as the Court must at this stage, Plaintiff has sufficiently alleged the causal connection between the alleged misrepresentations and his investment.

Fahad Ghaffar nevertheless argues that Plaintiff's reliance was unreasonable as a matter of law because Plaintiff is a sophisticated investor who received an Investment Memorandum and a

Due Diligence Book, negotiated an Investment Agreement, and had the opportunity to consult independent counsel. He principally relies on Carr v. CIGNA Securities, Inc., 95 F.3d 544 (7th Cir. 1996), and Banca Cremi, S.A. v. Alex. Brown & Sons, Inc., 132 F.3d 1017 (4th Cir. 1997). However, neither case justifies finding a failure to plead reliance here. In Carr, the Seventh Circuit held that a competent adult generally cannot reasonably rely on oral representations that are plainly contradicted by clear written disclosures provided before the investment because the investor has a duty to read those disclosures. Id. at 548-49. However, the court declined to adopt a categorical rule, emphasizing that written disclaimers do not provide a "safe harbor" in every case. Id. at 548. Plaintiff does not allege that the written materials contain information that directly contradicts Fahad Ghaffar's representations. Rather, Plaintiff alleges that Fahad Ghaffar provided misleading information concerning Innoveo's financial condition, customer growth, and business prospects, and that Plaintiff relied on those representations in deciding to invest. Docket No. 1 at ¶¶ 27-29. At the pleading stage, I cannot conclude that Plaintiff's reliance was unreasonable merely because he received written materials, particularly where Plaintiff alleges that the alleged misrepresentations were not apparent from those materials. Id. at ¶¶ 36-38.

Fahad Ghaffar's reliance on Banca Cremi is also unavailing because the factors identified there do not support dismissal at the pleading stage. Although Plaintiff's alleged sophistication weighs in Fahad Ghaffar's favor, that factor is not dispositive. The complaint alleges a relationship of trust between the parties and that Fahad Ghaffar made specific representations regarding Innoveo's financial condition and growth prospects, rather than generalized statements about the company's future. Docket No. 1 at ¶¶ 25, 27. Plaintiff also alleges that the alleged misrepresentations were not apparent from the information provided to him. Id. at ¶ 54. These allegations, taken as true, weigh against concluding that Plaintiff's reliance was unreasonable as a matter of law. Critically, Banca Cremi was decided on a developed summary judgment record after discovery, not on a motion to dismiss.

**5. Loss Causation**

Plaintiff must plead loss causation by providing the defendant "some indication of the loss and the causal connection that the plaintiff has in mind." Shash v. Biogen, Inc., 2023 WL 6617278, *19 (1st Cir. Oct. 11, 2023) (citing Dura, 544 U.S. at 347). One common method of establishing loss causation is to allege: (1) a corrective disclosure revealing previously concealed information;

(2) a subsequent decline in the value of the security; and (3) facts permitting a reasonable inference that the corrective disclosure, rather than other market forces, caused a substantial portion of the decline. Mass. Ret. Sys. V. CVS Caremark Corp., 716 F.3d 229, 237-38 (1st Cir. 2013) (quoting FindWhat Inv. Grp. v. FindWhat.com, 658 F.3d 1282, 1311-12 (11th Cir. 2011)). Although this is not the exclusive method of pleading loss causation, the U.S. Supreme Court has emphasized that private securities fraud actions require allegations supporting the traditional elements of proximate causation and economic loss. Dura, 544 U.S. at 346.

Fahad Ghaffar argues that Plaintiff fails to plead loss causation because the complaint alleges only that Plaintiff purchased Innoveo securities at an inflated price and that the company later failed, without identifying any corrective disclosure revealing the alleged fraud. It is true that purchasing a security at an inflated price alone would be insufficient. A plaintiff must allege more than that the investment declined in value after purchase. The plaintiff must allege facts connecting the decline to the revelation of the alleged fraud rather than to unrelated market forces or other intervening causes. Dura, 544 U.S. at 342-47. The complaint satisfies this standard. Plaintiff alleges that information concerning Innoveo's financial condition, which Fahad Ghaffar allegedly concealed, was revealed sometime between late 2023 and early 2024, when the company collapsed and sold its assets for a "fraction" of the invested capital. Docket No. 1 at ¶¶ 54, 81. According to the complaint, those developments revealed the falsity of Fahad Ghaffar's prior representations and caused the loss in value of Plaintiff's investment. Id. at ¶¶ 54, 87. Accepting those allegations as true, the complaint provides Fahad Ghaffar with adequate notice of both the alleged loss and the causal connection between the alleged misrepresentations and that loss, as required by Dura.[2]

[2] I decline to consider Fahad Ghaffar's reliance on the Diversis Capital Partners Letter of Intent, which reflects a non-binding indication of interest to acquire up to 100% of Innoveo at a $45-55 million valuation. Fahad Ghaffar argues that Plaintiff was aware of the letter, encouraged the transaction, and therefore cannot attribute his losses to the alleged fraud. This document is neither referenced in the complaint nor incorporated into the pleadings and is not to be considered at the pleadings stage. At this juncture, Fahad Ghaffar is prevented from relying on extrinsic evidence to advance an alternative theory of loss causation. Whether Plaintiff's losses resulted from the alleged misrepresentations, the circumstances surrounding the Diversis Letter, or other intervening events present factual issues that cannot be resolved from the pleadings. The question now is whether Plaintiff has plausibly alleged loss causation, not whether he can ultimately prove it.

### D. Puerto Rico Law Claims

#### 1. Puerto Rico Securities Fraud

Plaintiff asserts claims under PRUSA. See P.R. LAWS ANN. tit. 10, § 890. Defendants move to dismiss those claims because PRUSA does not apply to the private investment transaction at issue. Plaintiff does not oppose dismissal of the PRUSA claims but requests that the dismissal be without prejudice. I address the merits of the claims only to conclude that dismissal should be with prejudice.

Put simply, PRUSA does not apply to the allegations in this case. In a related case, another Court in this District rejected the same statutory theory advanced here, holding that PRUSA is not a general anti-fraud statute governing every private investment dispute, but applies to transactions involving persons or entities engaged in the securities business. Ghaffar v. Paulson, 2024 WL 453142, at *10 (D.P.R. Feb. 5, 2024). In reaching that conclusion, the District Court in Ghaffar relied on the Puerto Rico Supreme Court's decision in Olivella Zalduondo v. Triple-S, Inc., 187 D.P.R. 625, 646-48 (2013),[3] which held that PRUSA did not apply to a stock sale by a company not engaged in the securities business. The same reasoning applies here. Plaintiff's allegations arise from a private investment in a company that does not engage in the securities business. And Plaintiff's claims are not against persons or entities engaged in the securities business but rather against two individual investors, who prompted Plaintiff's investment in Innoveo. Applying PRUSA here would therefore extend the statute beyond its intended scope, an interpretation this District Court, premised on clear directive of the Puerto Rico Supreme Court, has already rejected. Ghaffar v. Paulson, 2024 WL 453142, at *10 ("It seems clear, then, that the law in Puerto Rico was always geared to persons involved in the securities business and not a company dedicated to insurance as in Olivella Zalduondo, or as here, to an automotive business."). Plaintiff requests dismissal without prejudice so that he may reassert the claim if discovery reveals additional facts bringing Defendants within PRUSA's scope. That request is unavailing. Plaintiff already knows that the two Defendants in this case are not in the business of selling securities and Plaintiff identifies no potential allegations that could materially alter the statutory analysis or distinguish

[3] This decision does not have an official English translation. In keeping with the requirements of our Local Rule 5(c), an English certified translation of this decision will be uploaded to the docket in due course.

this case from Ghaffar. Because the defect is legal not factual, Plaintiff's PRUSA claims should be dismissed with prejudice.

**2. Unjust Enrichment**

Plaintiff asserts a claim for unjust enrichment under Puerto Rico law. Puerto Rico recognizes unjust enrichment as a cause of action in equity that applies only where "the laws have not foreseen a situation where a patrimonial shift occurs [and] which shift cannot be rationally explained by the prevalent body of laws." Ortiz-Andújar v. Commonwealth of Puerto Rico, 22 P.R. Offic. Trans. 774, 780, 122 D.P.R. 817 (P.R. 1988); Gov't of Puerto Rico v. Carpenter Co., 442 F. Supp. 3d 464, 476 (D.P.R. 2020). This cause of action was recently codified in Article 1526 of the Puerto Rico Civil Code of 2020. P.R. LAWS ANN. tit. 31, § 10771. To allege a claim for unjust enrichment, a plaintiff must allege: "(1) an enrichment; (2) a correlative loss; (3) a nexus between the loss and the enrichment; (4) lack of cause for the enrichment; and (5) the absence of a legal precept excluding application of enrichment without cause." Ortiz-Andújar, 22 P.R. Offic. Trans. at 780; Gov't of Puerto Rico, 442 F. Supp. 3d at 476. But Article 1527 of the Puerto Rico Civil Code expressly bars an unjust enrichment claim when the law provides another legal remedy. See P.R. LAWS ANN. tit. 31, § 10772(c)(d) (2020) (unjust enrichment claim is not actionable when the law allows the claimant to exercise another claim or when there is a contract between the parties) (our translation). This is hardly a novel proposition. Under well-settled Puerto Rico law, unjust enrichment claims have been deemed subsidiary in nature, and the new Civil Code merely codified an already existing unambiguous rule. See Ocaso, S.A., Compañía de Seguros y Reaseguros, 915 F. Supp. 1244, 1263 (D.P.R. 1996) (quoting Medina & Medina v. Country Pride Foods Ltd., 631 F. Supp. 293, 302 (D.P.R. 1986)); Rivera-Muñiz v. Horizon Lines Inc., 737 F. Supp. 2d 57, 65 (D.P.R. 2010) (an unjust enrichment claim is "subsidiary to other remedies provided by law and is unavailable if the plaintiff may seek other forms of relief.").

As such, courts generally decline to apply unjust enrichment when plaintiff has asserted other claims arising from the same conduct. Ghaffar v. Paulson, 2024 WL 453142, at *14 (citing In re Fin. Oversight & Mgmt. Bd. for Puerto Rico v. Commonwealth of Puerto Rico, 578 F. Supp. 3d 267, 296 (D.P.R. 2021)); Puerto Rico Tel. Co. v. SprintCom, Inc., 662 F.3d 74, 97 (1st Cir. 2011) (finding unjust enrichment claim improper when a contract governed the dispute). This rule applies regardless of whether the other cause of action ultimately provides a viable remedy. "When

plaintiffs allege conduct that is covered by an applicable statute, even if plaintiffs have failed to sufficiently allege that claim or if the claim is time-barred, it is inappropriate to allow a claim for unjust enrichment." In re Fin. Oversight & Mgmt. Bd. for Puerto Rico, 578 F. Supp. 3d at 296 (citing Ocaso, S.A., Compañía de Seguros y Reaseguros, 915 F. Supp. at 1263 n.15); see also Westernbank Puerto Rico v. Kachkar, 2009 WL 6337949, at *29 (D.P.R. Dec. 10, 2009), report and recommendation adopted, 2010 WL 1416521 (D.P.R. Mar. 31, 2010) (explaining that the failure of other claims to survive does not render the underlying tort and contract laws inapplicable). Nor can a plaintiff avoid the application of this rule by pleading unjust enrichment in the alternative. See In re Fin. Oversight & Mgmt. Bd. for Puerto Rico, 578 F. Supp. 3d at 296 (the doctrine applies only when there is no applicable statute, which is distinct from the absence of a legal remedy).

The alleged fraudulent conduct here gives rise to a claim under the PSRLA. Because Plaintiff has an existing legal framework through which to pursue his alleged injury, unjust enrichment is unavailable as an alternative theory. See Ocaso, 915 F. Supp. at 1263 (equitable principles do not apply when defendant has alleged a claim for fraudulent conduct sounding in tort despite tort claim being time-barred). Accordingly, dismissal of the unjust enrichment claim is warranted.

**3. *Dolo* and Bad Faith Claims**

Plaintiff pleads *dolo* or deceit and invokes Article 1168 of the Puerto Rico Civil Code of 2020 as the basis for that claim. See Docket No. 1 at 17-18. Article 1168 provides that a debtor acting in good faith is liable for damages that were foreseen or foreseeable when the obligation was constituted, whereas "[i]n case of dolo," the debtor is liable for all damages resulting from the nonfulfillment of the obligation. P.R. LAWS ANN. tit. 31, § 9332 (2020). Thus, Article 1168 of the 2020 Puerto Rico Civil Code (previously, Article 1060 of the 1930 Puerto Rico Civil Code, P.R. LAWS ANN. tit. 31, § 3024) addresses the consequences of *dolo* or deceit in the nonfulfillment of an existing obligation;[4] it does not govern *dolo* as a vice in consent during the formation of a

[4] Article 1164 of the 2020 Puerto Rico Civil Code defines *dolo* in the performance of a contractual obligation as "deliberate and bad faith non-compliance with an existing obligation." P.R. LAWS ANN. tit. 31, § 9316 (2020) (our translation). When a provision refers to an "existing obligation," it necessarily excludes tortious conduct because "in torts, the duty to plaintiff commences at the time of the injury." Ocaso, 915 F. Supp. at 1258.

contract. Even though Plaintiff cited solely to Article 1168 of the 2020 Puerto Rico Civil Code in support of its claim for *dolo* (see Docket No. 1 at pp. 17-18 ¶¶ 85-89), there is no dispute that Plaintiff does not allege to have a contract with Fahad Ghaffar or Amir Ghaffar. And in his submissions to the Court, Plaintiff has shifted gears and now argues that his claims against Fahad Ghaffar and Amir Ghaffar are for *dolo* in the formation of a contract. See Docket No. 27 at 27-28; Docket No. 53 at 36.

Article 285 of the Puerto Rico Civil Code separately addresses *dolo* as a vice to the consent necessary for the formation of a contract, P.R. LAWS ANN. tit. 31, § 6191 (2020) (previously, Article 1217 of the 1930 Puerto Rico Civil Code, P.R. LAWS ANN. tit. 31, § 3404). Article 292 of the Puerto Rico Civil Code provides that such *dolo* exists when one party induces another to execute a contract or enter a legal transaction that the latter otherwise would not have undertaken, id. § 6211 (2020).[5] Different from the remedies available for *dolo* in the fulfillment of an obligation, the *dolo* that vitiates consent (such as the *dolo* that induces another to execute a contract that he would not have otherwise undertaken) can lead to the annulment of the contract, as well as any damages suffered by the contracting party as a result of the fraudulent representations. See Article 286 of the Puerto Rico Civil Code, P.R. LAWS ANN. tit. 31, § 6192 (2020); Ocaso, 915 F. Supp. at 1257 ("Deceit of a 'serious' nature will render the contract null whereas 'incidental deceit' will merely cause indemnification of the damages incurred."). As such, even though Puerto Rico law distinguishes between *dolo* when a party obtains the consent of another through deceptive means from the *dolo* in the performance of a contractual obligation, both causes of action rest on the existence of an intended or actual contractual obligation, which is undisputably absent here.

Plaintiff alleges misconduct occurring at the formation of the investment, rather than the subsequent breach or nonfulfillment of a contractual obligation. Under Puerto Rico law, *dolo* is a broad concept encompassing fraud, deceit, misrepresentation, undue influence, and other insidious machinations affecting a contracting party. See Generadora de Electricidad del Caribe, Inc. v.

[5] When alleged in connection with the formation of a contract, *dolo* essentially constitutes fraud in the inducement. Portugues-Santana v. Rekomdiv Int'l, 657 F.3d 56, 59-60,62 (1st Cir. 2011). *Dolo* may be either grave or serious, when it is determinative of a party's consent, or incidental, when it merely influences the party's decision to consent. See P.R. LAWS ANN. tit. 31, §§ 6211, 6213. Serious *dolo* in the formation of a contract occurs "when by words or insidious machinations on the part of one of the contracting parties the other is induced to execute a contract which without them he would not have made." Burk v. Paulen, 100 F. Supp. 3d 126, 134 (D.P.R. 2015).

Foster Wheeler Corp., 92 F. Supp. 2d 8, 19 (D.P.R. 2000); Márquez v. Torres Campos, 111 D.P.R. 854, 11 P.R. Offic. Trans. 1085, 1096 (1982). The complaint does not allege that Fahad Ghaffar or Amir Ghaffar were parties to the Investment Agreement. To the contrary, Plaintiff alleges that "pursuant to the April 7, 2021, investment agreement, iSource agreed to subscribe to 5,072 newly issued Class A Preferred Shares in Inno AG for a total consideration of $4,000,000 on behalf of Estancias Twelve Trust[.]" Docket No. 1 ¶ 41. Thus, the agreement identified in the complaint was not between Fahad Ghaffar or Amir Ghaffar and Plaintiff. That deficiency is dispositive of Plaintiff's contractual *dolo* theory against both Fahad Ghaffar and Amir Ghaffar.[6] Ocaso, 915 F. Supp. at 1257 ("Given the particularized and narrow remedy provided by the statute, it is reasonable to conclude that **only parties** to the contract may be sued under this provision […]") (emphasis in the original); See e.g., Kopittke v. Dealer Mkt. Exch. PR LLC, 2022 WL 22895016, at *4 (D.P.R. Mar. 31, 2022) (dismissing claim for *dolo* under Puerto Rico law because plaintiff did not allege to have entered into a contract with defendant nor that defendant avoided complying with any contractual obligations he owed to plaintiff). Further, a finding of *dolo* in the formation of a contract could render the agreement voidable, a remedy that Plaintiff neither seeks nor could obtain against the individual Defendants here. Accordingly, Plaintiff fails to state a claim for *dolo* under the formation theory (or even under a performance theory) against Defendants. Id. at 1258 (when liability arising from alleged misrepresentation is not premised on any contractual obligations— the contract had not yet materialized— but on a general obligation to negotiate in good faith, the source of potential responsibility is premised in the Puerto Rico tort statute).

The above notwithstanding, Plaintiff seeks damages arising from Defendants' alleged conduct. Docket No. 1 ¶ 89. The central theory underlying Plaintiff's claims in the complaint is that Defendants, through various misrepresentations and concealment, engaged in a fraudulent scheme to induce Plaintiff to invest in Innoveo despite knowing that the company's financial condition and technology rendered the investment unsound. Although Plaintiff characterizes this

[6] The provision of the 2020 Puerto Rico Civil Code that Plaintiff invokes in his submissions at Docket No. 27 at pp. 27-28 and Docket No. 53 at p. 36, Article 285 at P.R. LAWS ANN. tit. 31, § 6191, is codified in the portion of the code that regulates the validity of contractual obligations. This was also true of the original provision in the 1930 Puerto Rico Civil Code, Article 1217 at P.R. LAWS ANN. tit. 31, § 3404. It thus follows that these provisions are intended to regulate contracts, not claims in tort for fraudulent inducement, which is the only viable claim that Plaintiff could assert against non-contracting parties such as Fahad Ghaffar and Amir Ghaffar.

conduct as *dolo* in the formation of a contract, or fraudulent inducement, liberally read, the claim as pled seeks damages for alleged tortious misconduct. Docket No. 1 ¶¶ 85-89. Because neither Defendant sought dismissal of Plaintiff's *dolo* claim on the grounds that Plaintiff does not allege to have had a contractual obligation with either Defendant, I evaluate Plaintiff's claim under the Puerto Rico general tort statute.

Article 1536 of the 2020 Puerto Rico Civil Code provides the general basis for liability when a person, through fault or negligence, causes damages to another.[7] A plaintiff bringing a tort claim under Article 1536 must establish: "(1) a duty requiring the defendant to conform to a certain standard of conduct, (2) a breach of that duty, (3) proof of damage, and (4) a causal connection between the damage and the tortious conduct." Baum-Holland v. Hilton El Con Mgmt., LLC, 964 F.3d 77, 87 (1st Cir. 2020) (quotations and citations omitted). Further, "in order to prove fraud under Puerto Rico law, a plaintiff must establish: (1) that a false representation was made; (2) that the plaintiff reasonably and foreseeably relied thereon; (3) that the plaintiff was injured by his reliance; and (4) that the defendant intended to defraud the plaintiff." Wadsworth, Inc. v. Schwarz-Nin, 951 F. Supp. 314, 322-323 (D.P.R. 1996) (discussing fraud as a tort) (citing F.C. Imports v. First Nat. Bank, 816 F. Supp. 78, 87 (D.P.R. 1993)).

Liberally construed, the complaint alleges that Defendants breached their duty of care by intentionally making misrepresentations and concealing material information concerning Innoveo's financial condition, valuation, technology, and growth prospects, thereby fraudulently inducing Plaintiff to invest in Innoveo. The alleged intentional deception constitutes the wrongful conduct that could potentially satisfy the breach component of Plaintiff's tort claim. Nonetheless, because Plaintiff's theory is premised on fraud, the allegations must satisfy Federal Rule of Civil Procedure 9(b), which requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); In re Fin. Oversight & Mgmt. Bd. for Puerto Rico, 578

[7] Although a new Civil Code was adopted in 2020, the Puerto Rico general tort statute did not suffer substantial changes. Article 1536 replaced Article 1802 when the new Puerto Rico Civil Code came into effect in 2020. Article 1536 contains the same elements as its predecessor. See González-Ortiz v. Puerto Rico Aqueduct and Sewer Auth., 2024 WL 3759659, at *10-11 (D.P.R. Aug. 12, 2024); QBE Seguros v. Morales-Vázquez, 2023 WL 3766078, at *3 (D.P.R. June 1, 2023). As such, all caselaw analyzing Article 1802 "remains in effect and will be applied to any actions brought pursuant to Article 1536 of the Puerto Rico Civil Code of 2020." Dumanian v. FirstBank of Puerto Rico, 2024 WL 197429, at p. 3 n.4 (D.P.R. Jan. 17, 2024).

F. Supp. 3d at 284 (applying Rule 9(b) heightened pleadings standard to fraud-related Puerto Rico statutes). This ordinarily requires pleading the "who, what, where, and when of the allegedly false or fraudulent representation." Hosseini v. Cap. One, N.A., 217 F. Supp. 3d 441, 451 (D. Mass. 2016) (quoting Rodi v. S. New England Sch. of Law, 389 F.3d 5, 15 (1st Cir. 2004)). "In securities fraud cases, this requirement is comparable to and effectively subsumed by the requirements of the PSLRA." Mississippi Pub. Employees' Ret. Sys., 523 F.3d at 85 n. 5 (citing ACA Fin. Guar. Corp. v. Advest, Inc., 512 F.3d 46, 58 n. 7 (1st Cir. 2008)).

Plaintiff also seeks damages for bad faith and cites Article 18 of the Puerto Rico Civil Code of 2020 as the basis for that claim. See Docket No. 1 at p. 18 ¶¶ 90-93. Article 18 provides that the law does not protect the abuse of rights or their exercise contrary to the social order, and that an act or omission that manifestly exceeds the ordinary limits of a right and causes harm to another may give rise to compensation and appropriate protective measures. P.R. LAWS ANN. tit. 31, § 5337 (2020). I do not read Article 18 as authorizing an independent cause of action, separate from the damages framework for the conduct alleged here. To the extent Plaintiff seeks damages for tortious conduct, Article 1536 provides the applicable framework. I thus consider Plaintiff's allegations of bad faith as part of its tort theory rather than as an independent cause of action for damages under Article 18.[8] See Ocaso, 915 F. Supp. at 1258 (a tort claim under Puerto Rico law may be based on a general obligation to negotiate in good faith).

**a. Fahad Ghaffar**

I have already concluded that Plaintiff adequately pled, under the heightened requirements of Rule 9(b) and the PSLRA, that Fahad Ghaffar made actionable misrepresentations concerning Innoveo's valuation and growth. Those allegations support Plaintiff's fraud-based tort claim against Fahad Ghaffar at the pleading stage. Specifically, Plaintiff alleges that Fahad Ghaffar provided materially false information concerning Innoveo's financial condition and prospects while knowing that the information was false and while concealing material facts relevant to Plaintiff's investment decision. If proven, such conduct could constitute the intentional and wrongful conduct necessary to establish a breach of duty under the Puerto Rico general tort statute. The allegations also plausibly connect that conduct with Plaintiff's decision to invest and the

---

[8] Indeed, in addressing arguments for dismissal, Plaintiff lumped the claim for *dolo* and that for bad faith together. See Docket No. 27 at pp. 27-28 and Docket No. 53 at p. 36.

resulting financial harm. To be sure, the fact that Plaintiff has adequately pled federal securities fraud does not, by itself, establish a violation of the Puerto Rico general tort statute. The two theories arise under different legal frameworks and have different requirements. Nevertheless, the allegations supporting the securities-fraud claim are relevant because these provide specific facts from which the Court may plausibly infer that Fahad Ghaffar intentionally deceived Plaintiff into investing in Innoveo. At the pleading stage, those allegations are sufficient to support the intentional misconduct alleged as the basis for Plaintiff's tort claim. I recommend allowing Plaintiff's fraud-based tort claim against Fahad Ghaffar to proceed to discovery.

**b. Amir Ghaffar**

The analysis as to Amir Ghaffar is different. As discussed above, Plaintiff has not adequately pled under Rule 9(b) or the PSLRA that Amir Ghaffar's statements concerning Innoveo's technology and business condition were false or misleading when made. The complaint lacks specific facts from which one could infer that Amir Ghaffar knew of the alleged technological deficiencies, knew that Innoveo's financial condition differed from his representations, or intentionally concealed material information from Plaintiff at the time of the investment. Because Plaintiff has not adequately pled the underlying misrepresentations or intentional deception with the particularity required by Rule 9(b), the complaint does not plausibly establish the wrongful conduct that would constitute a breach of duty under the Puerto Rico general tort statute. Ultimately, Plaintiff has not pled any facts from which the Court could infer that Amir Ghaffar intended to defraud Plaintiffs, an essential element of the fraud claim under Puerto Rico law. At most, Plaintiff alleges that statements made by Amir Ghaffar about Innoveo later proved inaccurate or that Innoveo subsequently experienced financial difficulties. Such allegations, without specific facts from which one could infer that Amir Ghaffar knew or intended his statements to be false or misleading when made, are insufficient to support Plaintiff's fraud-based tort claim against Amir Ghaffar. Thus, unlike the allegations against Fahad Ghaffar, the allegations against Amir Ghaffar do not satisfy the heightened pleading requirements applicable to Plaintiff's fraud-based theory. That deficiency is fatal to Plaintiff's tort claim against Amir Ghaffar.

**4. Estoppel**

Plaintiff invokes Puerto Rico law's equitable estoppel doctrine of *actos propios* alleging that, during the summer of 2023, Fahad Ghaffar promised to return Plaintiff's $4,435,307

investment in Innoveo, that Plaintiff relied on that promise by refraining from acting against Defendants to recover his investment, and that he was prejudiced as time passed without his pursuit of earlier means of recovery, and Fahad Ghaffar did not make good on his promise. Docket No. 1 at ¶¶ 51, 101-104. The complaint alleges that Plaintiff relied on that promise made by Fahad Ghaffar, not Amir Ghaffar, in support of his estoppel claim. Id. Because Plaintiff does not allege reliance on any promises made by Amir Ghaffar, I analyze the estoppel claim as to Fahad Ghaffar only.

Puerto Rico has rejected the common law doctrine of equitable estoppel in favor of the civil law doctrine of *actos propios*. See CMI Cap. Mkt. Inv., LLC v. Municipality of Bayamón, 410 F. Supp. 2d 61, 76 (D.P.R. 2006) (citing Corraliza v. Bco. Des. Eco., 153 D.P.R. 161, 171-172 (2001)). The doctrine is grounded in the principle of good faith and precludes a party from engaging in conduct that is inconsistent with the party's prior acts. International General Electric, Puerto Rico, Inc. v. Concrete Builders of P.R., Inc., 4 P.R. Offic. Trans. 1221, 1231, 104 D.P.R. 871, 877-78 (1976)). To plead a claim under the doctrine of *actos propios*, a plaintiff must allege: (1) specific conduct by the defendant; (2) conduct creating an apparent situation contrary to reality that is capable of influencing another's conduct; and (3) good-faith reliance resulting in prejudice if that reliance is frustrated. Puerto Rico Electric Power Authority v. Vitol, Inc., 2012 WL 12995756, at *15 (D.P.R. Sept. 12, 2012) (citing International General Electric, 4 P.R. Offic. Trans. at 1231).

Fahad Ghaffar argues that Plaintiff's claim is implausible because a cognizable action of *actos propios* requires consistent conduct that gives rise to justified reliance and resulting prejudice. Fahad Ghaffar argues that Plaintiff's own conduct in connection with the Diversis Capital Partners Letter of Intent contradicts his alleged reliance. The letter contains a non-binding indication of interest to acquire up to 100% of Innoveo at a $45-55 million valuation. Fahad Ghaffar points to Plaintiff's alleged efforts in August 2023 to pursue the transaction, arguing that Plaintiff was aware of the letter and encouraged the proposed transaction and therefore cannot plausibly claim that he relied on Fahad Ghaffar's promise while simultaneously pursuing an exit strategy. As discussed above, I decline to consider the Diversis Capital Partners Letter of Intent at the pleading stage. At this stage of the proceedings, I will not assess the weight of the letter or weigh in as to whether Plaintiff's conduct in connection with it undermines his alleged reliance.

The letter is neither referenced in the complaint nor incorporated into the pleadings. Accordingly, it is extrinsic to the pleadings and cannot be used to defeat Plaintiff's claim prior to discovery.

Plaintiff alleges that, during the summer of 2023, Fahad Ghaffar promised to return Plaintiff's investment; that Plaintiff relied on that promise because it was made by someone he considered a close friend; that, as a result, he refrained from taking action to recover his investment; and that he suffered prejudice as time passed without pursuing other means of recovery and Fahad Ghaffar failed to follow through on his promise. Accepting these allegations as true and drawing all reasonable inferences in Plaintiff's favor, Plaintiff has adequately pled the elements of *actos propios*. Defendant's challenge to the element of reliance therefore does not warrant dismissal of the claim of this stage. I recommend that Plaintiff's claim of *actos propios* be allowed to proceed at the pleading stage.

One caveat remains. My recommendation as to the claim of *actos propios* is premised strictly on the arguments before the Court. Because Fahad Ghaffar has not advanced any other grounds for dismissal of the *actos propios* claim, I do not address other potential deficiencies in the claim; to wit, whether the claim of *actos propios* may be asserted offensively as an independent cause of action rather than defensively as an affirmative defense and whether, because any such claim would be one in equity, the nature of such a claim is subsidiary and would only survive absent the existence of another legal remedy to address the injury. See Puerto Rico Electric Power Authority, 2012 WL 12995756, at *15; CMI Capital Market Investment, LLC v. Municipality of Bayamón, 410 F. Supp. 2d 61, 76 (D.P.R. 2006); CPC Carolina PR, LLC v. Puerto Rico CVS Pharmacy, LLC, 494 F. Supp. 3d 144, 157 (D.P.R. 2020).[9]

[9] These cases describe *actos propios* as an equitable doctrine rooted in the broader concept of equity embodied in Article 7 of the 1930 Puerto Rico Civil Code. The Puerto Rico Civil Code of 2020 does not contain a comparable provision. Nevertheless, Puerto Rico courts have continued to recognize the doctrine, and nothing before the Court suggests that a cause of action of *actos propios* may be asserted where an alternative legal remedy is available. On this last point, it would have been reasonable to argue that the Puerto Rico Civil Codes's general tort provision could provide a legal remedy for the injury Plaintiff attributes to Fahad Ghaffar's alleged unfulfilled promise to Plaintiff, potentially leaving no remedial gap for *actos propios* to fill. See CPC Carolina PR, LLC, 494 F. Supp. 3d at 157 (declining to apply the equitable doctrine of manos limpias (unclean hands) where the plaintiff could pursue damages under a breach-of-contract theory).

## IV. Conclusion

For the reasons discussed above, I recommend that Fahad Ghaffar's motion to dismiss be **GRANTED in part and DENIED in part**. Plaintiff's federal securities fraud claims against Fahad Ghaffar should proceed to the extent that they are based on alleged misrepresentations concerning Innoveo's growth and valuation but should be dismissed to the extent that they are grounded on alleged misrepresentations regarding Fahad Ghaffar's expertise and Innoveo's technological capabilities. Plaintiff's estoppel claim against Fahad Ghaffar should also proceed, as well as his *dolo* and bad faith damages claims, to the extent that these are grounded on extracontractual liability. However, Plaintiff's PRUSA and unjust enrichment claims against Fahad Ghaffar should be dismissed. I further recommend that Amir Ghaffar's motion to dismiss be **GRANTED** in its entirety.

This Report and Recommendation is issued pursuant to 28 U.S.C. §636(b)(1) and Rule 72(d) of the Local Rules of this District Court. Pursuant to Local Rule 72(d), the parties have **fourteen (14) days** to file any objections to this Report and Recommendation. Failure to file timely and specific objections may be deemed waived by the District Court and claims not preserved by objections may be precluded on appeal. See Thomas v. Arn, 474 U.S. 140, 155 (1985); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Davet v. Maccarone, 973 F.2d 22, 30-31 (1st Cir. 1992); Henley Drilling Co. v. McGee, 36 F.3d 143, 150 (1st Cir. 1994).

**IT IS SO RECOMMENDED.**
In San Juan, Puerto Rico, this 1st day of September 2026.

s/Giselle López-Soler
GISELLE LÓPEZ-SOLER
United States Magistrate Judge